Good morning. First case on our call this morning is agenda number six, case number 106736, People of the State of Illinois Appelant v. Willie McLaurin, Applee. You may proceed, Counsel. May it please the Court. My name is Michelle Katz. I'm a Cook County Assistant State's Attorney appearing on behalf of the people of the State of Illinois. The issue in this case arises from the trial court's responses to several questions that were asked by a deliberating jury that ultimately convicted the defendant of aggravated unlawful assault. And unlawful use of a weapon by a felon, the defendant having previously been convicted of armed bank robbery. Specifically what's at issue is what took place over the course of three and a half hours, during which time five notes were sent by the deliberating jury to the judge. And those notes consisted of the following. A copy of a defense stipulation, as well as a copy of testimony that had been provided by one of the State's witnesses, a police officer, who testified regarding the underlying incident in this case. In response to that request, the judge tendered the sought-after items, a copy of the stipulation was tendered to the jury, as well as the testimony. Subsequently, approximately one hour later, at three o'clock in the afternoon, the jury sent a second note. They indicated that they were deadlocked at 8-4, and that apparently no one was willing to change their mind. At which point the trial court asked the parties, the prosecution and the defense attorney, if they wished to assist in the preparation of the court's response. And the court responded in writing, and the response consisted of this. Continue to deliberate with an open mind. Okay, now we go forward to about 15 minutes later, the jury sends its third note. The third note indicates, again, their belief that they are deadlocked, only the number has now shifted. We were at 8-4 before, now we're at 7-5, and based on the evidence, we don't believe that we can reach a verdict in this case. Twenty minutes later, before the court had responded to this third note, the fourth note is delivered. The fourth note, the contents are essentially identical to what was in the third note. The count is the same, we're at 7-5, we're deadlocked, and don't believe that we can reach a verdict. In response to the third and fourth notes, the court instructed his deputy sheriff to tell the jury to continue deliberating. Which they apparently did, because they came back 25 minutes later with a request for additional testimony in the way of a transcript from another police officer who had testified on behalf of the state. And approximately an hour after this, they returned a verdict. I should mention the court did the same thing. It gave the requested, the sought after transcript to the jury. Now, we know this through not only the jury notes, which were part of the common law record in this case, but through defense counsel's preparation of an agreed statement of facts pursuant to Supreme Court Rule 323D. Nowhere in this agreed statement of facts is there so much of a word of protest to the absence of the defendant at the time that the responses were framed, the conference on these jury notes. There was not any sort of protest, word of protest issued to the substance of the court's responses to any of these five questions. There was not a protest to the manner in which the responses were then tendered to the jury. And there was no objection posed in a post-trial motion to anything that transpired during jury deliberations. So having said that, the issue in this case is whether or not where a judge properly responds to a jury's questions, and where those responses are, and where those responses are given in the presence of, and with the participation of defense counsel, who acquiesces to the entirety of everything that transpires, whether a defendant can wage an attack on the propriety of those proceedings on appeal. Was the defense counsel present, and this took place in chambers. Yes. And it was defense counsel present for each and every one of these note incidences or events? According to the stipulation, the agreed statement of facts, which is part of the record in this case, it states that two defense attorneys and two prosecutors were present for the duration of these exchanges. There's nothing to indicate that at any point in time that defense counsel was not present. And it being the burden of the person who is appealing from that judgment to make a complete record, and we're not contesting the ability of a defendant to do so through an agreed statement of facts, but it's incumbent on the person making that agreed statement of facts to accurately reflect everything that transpired, including whether objections were waged. So in the absence of any objections in the substance of the body of that agreed statement of facts, it's the people's position that there was no objection. How do you address the defendant's position that unless there is an affirmative showing of waiver to be present by the defendant, that this court should presume the defendant did not waive his right to be present? An affirmative waiver would require the existence of a constitutional right. It's our position that the right of presence is not a constitutional right. It's a derivative right, and it requires that something else be fundamentally wrong of a substantial nature to elevate it to that position. So you're contesting that there even was a constitutional right to be present by the defendant? Absolutely. Are you also contesting the fact that when we look at this agreed statement of facts without an affirmative representation that the defendant waived that right, that we're to presume he didn't waive that right, or do you also have problems with that? I have problems with the fact that the defense is saying that there needed to be an affirmative waiver on the record. There is no indication one way or the other what transpired outside of that room where the conferences were being held. We don't know if defense counsel went to the lockup and said to the defendant, this is the question the jury asked. I mean, ultimately our position is it doesn't matter whether that conversation transpired or not, but in terms of there being a constitutional right to be present, there is a constitutional right to be present. But moving to the question that you're asking me about whether or not there is a constitutionally based right, it's our position that based on this Court's holding in Bean, and based on Bean, Bull, Hickey, and Lindsey, that this Court has clearly, repeatedly articulated that there is no constitutional freestanding right of presence. And in Bean, the Court specifically adopted the United States Supreme Court's cases in Snyder and Stintzer and Gagnon, all of which hold that there is no constitutional right for purposes of the 14th Amendment. And I need to clarify that I'm talking about the 14th Amendment. I'm not talking about the 6th Amendment. This case does not involve constitutional rights or confrontation rights. So that's not what we're discussing. We're talking about due process. And by adopting the United States Supreme Court's position, the Court couldn't have been clearer. The best case I think that supports our position for this is the case of People v. Hickey. And in that case, there were, as in this case, five notes that were sent out, and the Court replied in writing, and it didn't reply to some of the requests. And that was a capital case. I should note as well. It told, unlike this case, did not give the transcripts that were requested by the jury. And at the end of the day, this Court, relying on Bean, relying on the United States Supreme Court decision in Stintzer, said that there's no constitutional violation that transpires here. The problem in this case mostly flows from the fact that the Court, while purporting to apply a plain error analysis, strayed very badly from doing so. And so a number of things happened. The first thing is that you have a finding of clear or obvious error on the basis of manifestly erroneous findings. Because you've got the Court starting its analysis by saying, we find that there's these clear errors, and they consist of the fact that the defendant was not informed, was not consulted, and was not allowed to be present. The problem with this statement, which is the bedrock of everything else that happens in this case, is that nothing in that agreed statement of facts indicates that any of those things are true. So in response to your question, Your Honor, about the waiver and whether or not there needed to be a waiver of record, the waiver sort of presupposes that the Court did something affirmatively wrong and somehow prevented the defendant from being present. In terms of a plain error analysis, the only thing that we know is that he wasn't there, but the counsel was there, and counsel didn't say anything. That's what this record shows. So after the Court makes these findings, it then takes the findings, adds to them the fact that it's of a constitutional nature because it deprives the defendant of his constitutional right to be present, and then goes from there into a plain error analysis where it says it satisfies both prongs of the plain error test. Because the evidence in this case is closely balanced, and I'm going to get to that a little bit later, and that under second prong, it shows that the defendant was denied a fair trial. Now, I've already talked about the right of presence piece of it as it pertains to the Court's responding to the jury's questions. But what's important, and I think what was lost on the appellate court in determining whether or not we were talking about a substantial right, is the nature of what the Court did. Because in a case such as this, unlike Childs, in marked contrast to the cases where the Court did not respond correctly to the jury's questions here, there is nothing objectionable to the substance of any of the Court's responses. It's facially neutral words. When a judge says to a deliberating jury, continue to deliberate, there can't be a more proper answer than that. When a court exercises its discretion to give a jury the items that they seek, which are properly admitted evidence, the testimony of the police officers, a defense stipulation, and it's notable here, too, that the jury was asking both for things from the defense case as well as from the prosecution case. And when a judge turns around and says, I'm giving the jury the transcripts, that can't constitute error. Same thing, you know, the defendant below didn't even suggest any way in which he could have done anything to contribute to the fairness. Let me ask you about the deputies' communication. The Seventh Circuit in Moore v. Knight held that using the bill to verbally communicate with the jury is presumptively prejudicial. Is that still good law? There's no question that there is still, REMER is still good law. And I am not asking this Court to find that it's not good law. Here's the distinction to be drawn. The REMER presumption that arises from a court's ex parte communication with a jury is only properly applied when you have a true ex parte communication. Meaning, here, you have a defense attorney who is present. All of the cases where counsel was not present. And therefore, there's not a plain error analysis to apply at all. I mean, your means of assessing what transpired is completely different than a case such as this. Is REMER good law? Yes, REMER is good law. Has the Court indicated, including this Court, that there's been a resistance or a backing off of it? Yes. Does it matter in this case, do you need to reach that issue? Absolutely not. Because here, one is very hard pressed to understand how an interaction can be deemed ex parte when counsel is there. It defies the very definition of ex parte. Counsel, following up on Justice Freeman's question, though, the Seventh Circuit held that the presumption of prejudice applies to cases where the judge uses an intermediary to communicate orally with the jury. Again? I'm sorry. So explain that. What are we going to do with that case that's out there? Clearly, the sheriff was an intermediary. Clearly, the sheriff was an intermediary. So in determining what way to be given to that, I think that if you look at the case which is cited in my brief of U.S. versus DiPietro, which is admittedly outside of this jurisdiction, but it's a Seventh Circuit case that deals with this question of what happens when the judge does that. Again, that's a situation, that's a case. And more, these are cases where there's no defense counsel present. That's a critical distinction to be drawn. But in DiPietro, defense counsel is not present. In this case, the judge tells the deputy sheriff to instruct the jury to continue deliberating. And that case was subjected to a harmless error analysis. And the court ultimately found that that was harmless error. The problem is, what does Remmer provide for? Remmer, by its very terms, says that there's a violation where counsel's not present. And Remmer provides It's so closely drawn that it's only for when counsel's not present, Remmer? I thought it was a broader case. Well, if you look at the wording of Remmer, it indicates right in there that the violation occurs when counsel is not present. It's either is not present or is not informed. And what happens is, and if you look at the facts of Remmer themselves, that's very telling in terms of distinguishing what happens in this case from what happens in that case, because there you've got a situation where there is an attempt to bribe a juror. The court engages in a discussion with the juror about this attempted bribe. The court does not tell defense counsel anything about it. He takes it upon himself to have the prosecution contact the FBI. The FBI actually goes in and has a conversation with the juror about this alleged threat. And what comes out of Remmer is a presumption of prejudice based on these ex parte communications. But interesting, Remmer provides for what? An evidentiary hearing, not for a reversal of a defendant's conviction. So here you have a defendant who the essence of what is done in this case by the juror's, by the sheriff's delivery orally of the identical instruction that was given in writing is not materially, it's not different in any material sense. It's not the same. It's not the same. It's not the same except under this particular case an intermediary was there. I believe that that case, the factual differences of that case in terms of the presence of counsel is what distinguishes it. And I believe that this type of situation cannot constitute, the court found that this was structural error essentially. That's what the court found. And if you look at all of the cases and both cases, in which there have been sheriffs who have had conversations with jurors, that they've always been subjected to a harmless error analysis. And here the court sort of engaged in a harmless error analysis, which it never should have gotten to because it's a defaulting defendant again under plain error, and found that because the jurors have always been subject to a harmless error analysis, because the defendant's liberty was implicated, meaning he was convicted, that the state can show that the error was harmless beyond a reasonable doubt. So there's an attempt to impose, apply a plain error analysis. Then there's grasping at this remor presumption, which again we argue is inapplicable. And then there's a finding that it constitutes an error under the second category, which is a structural error. All of which the state maintains was improper. For these reasons and those set forth in our brief, we'd ask that you affirm the defendant's convictions. Thank you, counsel. Mr. Cerritos. Good morning, your honors. Good morning, counsel. May it please the court, my name is Manuel Cerritos, and I'm here this morning on behalf of Willie McLaurin. Mr. McLaurin has raised two issues in the appellate court, and the appellate court allowed relief as to both issues with a common origin, that is the inappropriate conduct of the judge. The issues advance from two different points in the record, and I will spend most of my time this morning discussing the most critical issue, that is the trial judge's decision to send the deputy sheriff to instruct the jury while they were deliberating. How was that done, according to the record? How was it done, your honor? Was the sheriff simply told by the judge in the presence of the lawyers what he should say to the jury or what he should? Well, that's an interesting comment, because how it was done, it was, as counsel notes, the first time it was done, it was by written instruction. The second time, after they received the instruction, it was by written instruction. And the third time, after they received the fourth note, it was the judge told the deputy sheriff, keep on deliberating. But we don't know the exact words that the judge gave. It's not in quotations in the agreed statement of facts, and we don't know what the deputy sheriff... What does it say in the agreed statement of facts? The agreed statement of facts reflect that Judge Schreier requested his bailiff to instruct the jury to keep on deliberating. We don't know what the deputy actually said to do this. This all happened in the presence of defendants' counsel? Well, the decision-making, yes, but that's the key confusion that the State brings onto the case. The State characterized the issue as not being ex parte, because counsel was involved. But the issue, the pinpoint issue, is what occurs in the jury room. That is rumor. That is ex parte violation when the deputy sheriff is sent into the jury room, no counsel present, no court reporter present, no judge present. In effect, the deputy sheriff is on his own. Is there an error, then, for a judge to have the deputy sheriff take a written instruction into the room, to the jury room, without bringing the jury back into the courtroom in the presence of all the parties? There's many ways of instructing the jury. That would be one of the allowable ones. The preferable way would be to bring the jury into the courtroom. Or, as Your Honor has suggested, you could send a note. But the key distinction... My question is, is it an ex parte communication if the judge, in the presence of the attorneys, and they prepare a response to the jury's question, and the judge hands it to the deputy and says, take this into the jury room. Is that an ex parte communication? I would gather not, Your Honor. Why not? And how is that different? Because the deputy sheriff, in that scenario, he's just the medium. He's just the message bringer. In our situation, the deputy sheriff is the conduit. He is, in effect, the message. We don't know what was said, and that's the problem. You also don't know, Mr. Cerrito, when he hands... In this particular case, and Justice Fitzgerald was getting there, we only have what we have in the record, and that's the statement of facts, which said this sheriff was told to go into the jury room and say, keep on deliberating. Now you're telling Justice Garmon that it's okay if the sheriff would have taken a note written by the judge that says, keep on deliberating, and handed it to the jurors. And the reason that you're saying one's okay and one isn't is we don't know what happened in that jury room when the sheriff did what he was told to do. If he goes into the jury room and he says, keep on deliberating, we don't know if a conversation ensued. Well, likewise, do we know if the sheriff hands a note that says, keep on deliberating, we still don't know whether the jurors said, what does that mean? What did the... I don't understand what that means. Tell the judge this. We have no idea. And as far as Remmer goes, I mean, the second part of the question is, quite a bit different situation than just someone saying, keep on deliberating. And there is some import to the fact, isn't there, that the jury would have said, keep on deliberating? The defense attorney acquiesced to the procedure that was taken by the judge here to just merely tell the jury to keep on deliberating. If I may address your questions in the manner and sequence that you were asked. Sure. We don't know when a deputy sheriff hands a note. But the inference is not there. The inference is different. We could infer that he just handed a note. But there's more going on when the deputy sheriff is thrust into the jury room. I used to stop you there, Mr. Cerullo. You're trusting the deputy sheriff to hand a note without conversation, but you're not trusting the deputy sheriff to acquiesce to the authority of the court in telling that deputy sheriff what to say. Because, Your Honor, it's open-ended. The judge has exclusive domain to instruct the jury. When you send a law enforcement officer, which the deputy sheriff is, his boss is the leading law enforcement officer of Cook County, you're sending a blank check into the unknown quantity into the jury room. Either way, if the message is sent in written or verbally, is it our obligation, responsibility to show that there was prejudice to the defendant? Well, that's where Remmer comes in. Remmer doesn't involve the, it involves, it involves a judge sending a government official into the jury room. And Remmer uses the presumption of prejudice. And I, just to explain the presumption of prejudice, it's not a get-out-of-jail card. All it does is, it says the United States Supreme Court and Remmer and the progeny, which the state does not address the progeny, because Remmer is a sparse, rather sparse in both facts and analysis, the progeny helps to develop it. Remmer says, the Remmer rationale is that, if the progeny, if the progeny, if the progeny, if the progeny, if the progeny, if the progeny, it's a, it's a, it's a, it's a, it's a pellet vehicle. It sends, it finds prejudice and it's asked the, the, the state, okay, you, you answer, how was this harmless. It, it's just a manner, a pellet vehicle, which gives the state the opportunity to say it was not, it did not affect the process. However, in this situation, it is rife with problems. As I mentioned here, the deputy sheriff is a law enforcement officer. The deputy sheriff, also in the context of this case, this, this case is a rather simple case. Four witnesses testified. The jury went out five and a half hours, and the basis, they wanted to review two notes. They wanted to review other law enforcement officers' testimony. If, again, it's not, it's not a note you send out. You're sending a law enforcement officer in, and it's off the record. We don't know the inflection that was used. We don't know the gestures or verbal or facial mannerism. We don't know. And the inference here is that, that it's not to be trusted. Counsel mentioned a structural error. It's, the judicial process, the integrity judicial process is at stake. When we use structural error verbiage. Also, the prejudice is immeasurable. We cannot calculate the prejudice if we don't have a record, if counsel's not present, if the judge is not present. Was it the defendant's responsibility to make that record? Well, Your Honor, defendant wasn't there. Was there any objection by counsel? No. We're not saying that, when I say judicial error or misconduct, we're just saying it was inappropriate. I gather this was an expediency thing. February 4th, 2005, and that's where the decision is wrong, it references February 5th. The brief statement of facts is February 4th. It was a Friday. Five and a half hours, the jury was out. They were deadlocked. They sent three notes. We're approaching four o'clock, or around about four o'clock. The inference we're gathering is that this was a time bomb. It was a confluence of many bad things occurring. A perfect storm, if you will. Credibility of the officers was at stake. Close case, three deadlocked jury notes, the time, the day of the week. How is the defendant's right to a fair trial thwarted by him not being in the chambers with respect to these notes? Well, Your Honor, he was in custody. I mean, that's a big part of your appeal here, right? That his right to a fair trial was thwarted by him not being there. So how was it thwarted? That lends itself to the jury note issue more than the sheriff. I understand. I just want to get it in before your time runs out. Okay, I'd like to get it in, too. He was in custody. The judge is responsible for bringing him in and out. Our position is that he would have added something to the fairness of the procedure. He might have objected to the whole process going on. If you sent in the deputy sheriff, maybe he has the common sense to say, well, the trial counsel had absolutely no problem. He raised no objection to him not being there, correct? Well, she raised no objection, but this issue is predominantly... Short of that, I'm just getting to where he's prejudiced as a result of this, right? Then appellate counsel, after a lot of thought, came up with reasons why the defendant was prejudiced as a result of not being in that room, right? There was thought. What are the odds that the defendant would have thought of those reasons? I think considerable, if he had known of what went on. There was a hole in the record, and I think a defendant who was aware of it, and that goes to the heart of the procedural default rationale. What argument that the defendant made, if he was in that room, what argument that he would have made that would have changed the outcome of this case? He could have objected, or he could have remained silent, but he would have brought it out post-trial. I have a few defendants who would drop a five-pound motion or two challenging the trial court's actions and file a crankle motion. I think any defendant with assault would have raised some response to these problems. With his counsel sitting there and not doing it? That would happen with his counsel sitting in the room having not done it? Yes, I think it was something outrageous. I think the defendant would have, we could hope, or at the very least he would think about it and raise this issue at trial. I think a lot of the questions raised here seem to me to indicate that the defendant's attorney went along with the procedure that was utilized for communicating with the jury. So there necessarily would not be an objection, which of course results in procedural default. In such cases, from an appellate advocate point of view, isn't it more properly in terms of ineffective assistance of counsel here? Should the appellate court have framed the issue in that manner? I think the appellate court in a roundabout way did so, bringing in plain error, but if we... If they did or did not, should we? No, Your Honor. This issue is primarily a judicial misconduct problem. In 30 years of appellate practice, over two appellate districts, I've never seen any issue similar to this. And it's a problem that may have occurred... So there's reasons for that, other than it only happened once in the last 30 years. That it happened and no error was ever suggested by it happening. And you're telling us about your years of, and I'm sure valuable years of service as a defense lawyer. Some of us, other people in the room have experiences, too, that we can't draw upon in deciding this case. Okay. I think I get the gist of what Your Honor is suggesting. I'd like to ask a follow-up question, too. I understood your answer correctly to Justice Thomas's question about what prejudice was shown. I didn't get an answer to that. I thought your answer was, you know, what difference would have happened had the defendant been in the room? And I think your answer basically was, he could have objected to the fact that he wasn't in the room. But what prejudice, for any of the questions where the jurors said we're deadlocked, for what information was sent back, how was there prejudice in the answers that were given or the responses that were given? That's my first question. I think to look at prejudice that way, I think that begs the question. The prejudice is to the integrity of the system. The system broke down. So you can't say that he was prejudiced in that way. No, that's my first response. My second response is that the Kentucky v. Stencer test says what Your Honor is alluding to, what defendant's presence would have added to the fairness of the procedure. And I think that's a hard question to answer, but in this case, quite easily, he was not there at the most crucial part of his trial. The state is arguing it's not even a trial. There's a jury, and then when the jury's out, there's not a trial. But then also they recognize that we're talking about a due process right. It started out, right to the present is a confrontational, started out as a confrontational right. But now we're in due process land, and a due process would suggest that he should be present. Counsel, can you give us a case where the defendant's absence alone during a jury question conference is a violation of the defendant's right to be present? Well, we rely on Childs and McDonald where a defendant's not there. But in those cases, there wasn't counsel there either. Yes, Your Honor. But in Illinois, it's a personal right. Counsel cannot waive. The judge certainly cannot waive. But is there any other case that you found anything like this? This is... With these facts, where counsel was present, but the defendant wasn't? No, Your Honor. Though I would suggest Moore v. Knight as a case where the prejudice was found. Generally, a remand, a remand violation requires evidentiary hearing. The court in Moore v. Knight remanded for habeas corpus issuance because the error is so egregious. Mr. Cerritos, on page 15 of your brief, you quote, I think from Remmer, where it says, In a criminal case, any private communication, contact, or tampering, directly or indirectly with a juror during the trial about the matter pending before the jury is for obvious reasons deemed presumptively prejudicial. Is it your contention that the verbal communication by the sheriff to the jury was about a matter pending before the jury? Telling, keep on deliberating. That was a Remmer violation? Is that your honest question? Is that about a matter pending before the jury? Yes. The jury is in deliberations. Okay. And that simple comment is about a matter? Yes. When a judge tells the sheriff to take the jurors to lunch, the jury goes in and takes them to lunch, is that an ex parte communication or is that a communication by someone other than the judge? The question is, it's a communication, but it's not a legal type of transaction. He's just doing what he's supposed to be doing. As opposed to here, he's instructing the jury in a manner that we don't have a clue as to what he said or whether there were any follow-up questions. I see by my light my time is up and we would like to ask this court to affirm the decision of the opponent court. Thank you. Thank you, sir. Ms. Cairns. Justice Burke, with respect to your question about Moore v. Knight and what's this court supposed to make of it, Moore v. Knight, this is the essence of the people's argument. There's two separate lines of cases. There's the cases that deal with forfeiting defendants whose attorneys are present, who do nothing, come back later and say, my right of presence was violated. And that's the Bean line of cases and all of the United States Supreme Court cases that that case relies on. Then there's the line of cases that start out with the common law line of cases, Philippen and Shields and Rogers that deal with ex-party communications between a court and a jury which the defendant and defense counsel do not know about. Remmer comes from that line of cases. Moore is another one on that same track because that is a situation, and I went back and checked my brief to make sure that I was correct, but that is a case where defense counsel did not know and was not informed of what transpired. That is the critical, fundamental difference between those two line of cases. Justice Garmon, you asked a question I think alluding to the language in Childs which is a little bit troubling because this court did make an affirmative statement about there being a requirement that communications between a judge and jury occur in open court. So in terms of the response to your question and defense counsel concedes it and I agree with him that a written response by a court to a deliberating jury is not problematic unless a supplemental instruction is required because if you look at Childs, what happened in Childs and all of those cases, and this brought me back to there's no infirmity in the court's responses here. In that case, and that's the only one that was reversed, we're talking about Kleiner, McDonald, and Childs. Childs is reversed because the court not only gave a response via the deputy sheriff to the deliberating jury, additionally that was done without the counsel being present or being notified. Counsel objected and asked for a mistrial upon learning of it but additionally this court found that the response was completely inadequate and Childs thereafter has really been used to stand for the proposition that there is an obligation on a trial judge when a question of law is specifically asked by a deliberating jury to answer that question. If that question needs to be answered in the way of a supplemental instruction, then you're triggering the requirement that it be done in open court. So there's a question about it's our position that these two lines of cases are completely reconcilable because one again involves the presence of an attorney and one doesn't. It's clear that it's not a structural error because Maurice McDonald's case, a capital defendant whose pro se has no ability to interact or offer up any suggestions to the court's responses yet this court found that that was harmless error based on the propriety of the responses that were given to the court's question. Again, going back to the Moore line well shouldn't we be troubled by the fact that there was this oral means of responding that was the same as the written response but that the deputy did it orally? I'm going to refer this court for the answer to that question back to the United States Supreme Court's decision in Gagnon because Gagnon which follows Remmer and we've got to keep in mind Remmer's been around for years the case is from the 1950s you've got a whole body of case law that comes up afterwards including Gagnon where the trial judge engages in a conversation with a juror tells the defense attorney he's going to do it it's clear that it's an ex parte communication there's a conversation that ensues and yet the court declines to find that that is going to satisfy plain error and regards it as forfeited. That's the ultimate authority on whether or not the defendant has the ability to take hold of that Remmer presumption and then say and by the way I'm entitled to a new trial. Um everything that we don't know and I agree there's a lot that we don't know in this case we don't know because the defendant didn't make an adequate record. Do we agree with what the contents of what are the contents of the agreed statement of facts? Absolutely. The problem is that everything that became the basis of a finding of error is what's not in that agreed statement of facts. The defendant did not avail himself of the opportunity to go and get a bystander's report which would have brought the court who made the decisions what the responses should be brought him into the mix and had there been any kind of dispute between the parties as to what transpired the court would have there would have been a hearing the court would have made findings and you would have a record that had flushed all of this out. You don't have that because of the choices that were made by the appellant. Let's see the deputy I guess this is the second to last thing I want to discuss. There's sort of a suggestion here that there was something untoward that was done by the deputy. The deputy is sworn to ensure that that jury does its job and in the absence of anything to suggest otherwise and here all we have at best is this trial court instructing the deputy we don't even know that he did it to tell the jury to continue to deliberate. If anything there should be a presumption that the deputy did exactly what he was supposed to do in light of the fact that the defense hasn't made a record to indicate otherwise. The burden is on him to provide the court with a record to show what transpired during those jury deliberations. There is no requirement that the court have a court reporter present. I cited two cases that stand for the proposition that there is no Smith and Edwards I believe that there is no obligation to have a court reporter for closing arguments. Clearly there is no case, at least not yet, where this court has indicated that there is a requirement that there be a court reporter present during a conference on jury deliberations. The defendant, the bottom line Justice Thomas as several of you have noted is the defendant's right to a fair trial was not thwarted. It wasn't impacted in any appreciable way. And that remains the overriding test to which a claim such as this based on a due process allegation of a defendant's constitutional right to be present has to be subjected. And when it is subjected to that test, it's clear that the appellate court improperly reversed this defendant's conviction. For these reasons, we ask that you affirm the defendant's conviction, reverse the appellate court's holding. I thank you.